IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 15-1314-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

I.     Background

Plaintiff applied for DIB, alleging disability beginning November 21, 2010. (R. 15, 147). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He argues that although the Administrative Law Judge (ALJ) found at step two of his sequential evaluation that Plaintiff has a severe cognitive disorder imposing moderate difficulties in concentration,

persistence, or pace, the only mental limitation assessed was for unskilled work, a limitation which he argues cannot as a matter of law adequately account for moderate difficulties in concentration, persistence, or pace.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

2

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds the ALJ properly explained Plaintiff's difficulties of concentration,

persistence, and pace, and why he found Plaintiff's cognitive disorder limited him to

unskilled work.  Accordingly, the court finds no error in the ALJ's decision.

## II.   Discussion

Plaintiff claims the ALJ failed to account for all of Plaintiff's severe impairments

because "Tenth Circuit and District of Kansas[1] law indicate that a finding of 'unskilled

work' is insufficient to account for moderate limitations in concentration, persistence, or

pace."  (Pl. Br. 7-9) (citing Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012);

Jaramillo v. Colvin, 576 F. App'x 870 (10th Cir. 2014) (without pinpoint citation);

Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005); and Keel v. Colvin, No.

13-1458-SAC, 2015 WL 1034419, *4 (D. Kan. Mar.10 2015)).  He argues that the ALJ

here did not identify specific work-related limitations, or explain how Plaintiff's cognitive

disorder affected his ability to perform basic mental work activities such as the abilities to

understand, carry out, and remember instructions; use judgment in making work-related

decisions; respond appropriately to supervision, co-workers and work situations; and deal

---

[1]Strictly speaking, there is no "District of Kansas law" equivalent to "Tenth Circuit law" in the sense that it might constitute precedent binding upon this court.  Cases from the District of Kansas are considered by the court for their persuasive value much as are cases from other district courts, Circuit Courts other than the Tenth Circuit, and unpublished opinions of the Tenth Circuit Court of Appeals.  Thus, in the string citation above Plaintiff has cited one case constituting precedent binding upon this court–Chapo.

with changes in a routine work setting, and that the record does not contain a medical opinion suggesting Plaintiff's specific work-related mental limitations. (Pl. Br. 9). He acknowledges Dr. Wang characterized Plaintiff's overall cognitive impairment as mild, but argues that the ALJ did not account for Dr. Wang's specific limitations. Id. at 9-10.

The Commissioner argues that the ALJ properly considered the record evidence in determining that Plaintiff was mentally able to perform unskilled work before his date last insured on December 31, 2012. (Comm'r Br. 7-15). She argues that the ALJ's determination was supported by the record evidence, and notes that the regulations and rulings distinguish between rating the severity of the four broad mental functional areas in applying the Commissioner's Psychiatric Review Technique at step two and three of the sequential evaluation process and in evaluating mental limitations when assessing an RFC between step three and step four of the sequential process. Id. at 11. She argues that an ALJ is not required to base mental RFC limitations on his step two and three findings in evaluating the four broad mental functional areas, but upon his evaluation of all of the relevant evidence in the record. Id. at 12. She argues that an RFC assessment that is conducted pursuant to the regulations and is supported by the record evidence is legally sufficient. Id. Finally, she argues that the cases relied upon by Plaintiff relate to different facts not present or compelling in this case. Id.

The court agrees with the Commissioner. Contrary to Plaintiff's argument, the ALJ here explained how Plaintiff's cognitive disorder affected his ability to perform basic mental work activities, and identified specific work-related limitations. (R. 18, 21). In

discussing Plaintiff's difficulties with concentration, persistence, or pace, the ALJ

specifically noted Dr. Wang's neuropsychological testing in September 2013, and noted

that Plaintiff had not reported difficulty concentrating and completing tasks, or with

memory problems before his date last insured:

> In September 2013, neuropsychological testing revealed, overall, mild cerebral functional impairment; with severe impairment in attention, but only mild impairment in memory (Ex. 13F/6 [(R. 455)]).  As discussed below, the evidence seems to suggest that this impairment was the result of the myocardial infarction in November 2010.  Nevertheless, between the results showing only mild impairment in overall cognitive functioning, and the claimant's extensive activities of daily living, the evidence in the record shows that the claimant is capable of sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in unskilled work.

(R. 18).  Later in the decision, the ALJ expressly related this to his RFC assessment:

> The claimant also alleges significant problems with concentration and memory (Ex. 3E/11; 4E/8 [(R. 198, 207)]).  However, there are no records of any complaints of cognitive difficulties prior to his date last insured.  In September 2013, the claimant underwent a neuropsychological evaluation with Lizhao Wang, Ph.D. (Ex. 13F [(R.450-57)]).  He reported that he had experienced cognitive problems since his heart attack in November 2010. He endorsed memory loss, forgetting what he was told to do, difficulty with concentration and staying on task and difficulty handling multiple tasks (Ex. 13F/4 [(R. 453)]).  Based on the test results, his premorbid cognitive functions were estimated to be in the low average range.  He demonstrated severe impairment in sustained attention, mild impairment in verbal memory and learning, mild to moderate impairment in executive functions and mild impairment in fine motor control of the left hand (Ex. 13F/5 [(R. 454)]).  Dr. Wang concluded that the claimant's neuropsychological profile indicated mild cerebral functional impairment and noted that the etiology of his cognitive impairments was unclear.  Dr. Wang did note that, given his medical history, it is likely that the claimant suffered from hypoxic-ischemic brain injury when he had the heart attack (Ex. 13F/6 [(R. 455)]).

6

The undersigned notes that there is no evidence of the claimant reporting any of these symptoms or cognitive difficulties to his treatment providers prior to December 31, 2012. None of his providers noted that the claimant had any difficulty understanding his prescribed treatment, or that he exhibited any memory loss or difficulty concentrating. Furthermore, during the evaluation, he was oriented times four, and was able to follow test instructions and stay on task throughout the testing period (Ex. 13F/5 [(R. 454)]). The lack of documentation and evidence prior to December 2012 severely detracts from the credibility of his allegations. Nevertheless, as there have been no intervening events that might explain his cognitive difficulties since his date last insured, the undersigned has given the claimant considerable benefit of the doubt and finds that his mild cognitive impairment is most likely associated with the myocardial infarction on November 21, 2010. This is consistent with a note from his treating physician indicating that the claimant has some cognitive deficits, which most likely stem from his previous myocardial infarction and anoxic event at that time (Ex. 11F/17 [(R. 437)]). While the evidence of a mild cognitive disorder does not support the degree of limitation alleged by the claimant, the undersigned has restricted the claimant to unskilled work only.

(R. 21) (emphasis in the ALJ decision).

As quoted above, the ALJ explained the bases for his determination that Plaintiff's mild cognitive disorder required a limitation only to unskilled work. The court finds those bases reasonable and supported by the record evidence. Plaintiff has not shown error. Moreover, the cases cited by Plaintiff do not require a different finding. In Chapo, the court noted that a doctor, Dr. Vega, had performed a mental status exam on the claimant and provided a six-page narrative report of that examination along with a detailed mental RFC form. Chapo, 682 F.3d at 1289. The court listed eighteen moderate, marked, or extreme limitations opined in Dr. Vega's mental RFC assessment. Id. at 1298-90. The court noted that the ALJ included only one of Dr. Vega's mental restrictions in the hypothetical questioning of the vocational expert (VE), that the

claimant was restricted to occasionally dealing with the general public.  Id. at 1290.  In a footnote, the court noted that the ALJ's hypothetical did not even include the restriction he assessed--to simple, unskilled work at best--and stated that mental functions "are not skills but, rather, general prerequisites for most work at any skill level."  Id. at 1290 n.3 (quoting Wayland v. Chater, Nos. 95-7029 and 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)).  Here, unlike the ALJ in Chapo, the ALJ provided a fair summary of Dr. Wang's report, and explained how he had applied that report.  And, his explanation is supported by the evidence.  Moreover, even the Wayland case upon which the footnote in Chapo relies, acknowledged that "there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with." Wayland, 1996 WL 50459, at *2.  This case provides such circumstances.

Each of the other cases cited may be similarly distinguished.  In Jaramillo, Dr. Mellon opined that the claimant had moderate limitations in three mental activities, and the ALJ accorded great weight to Dr. Mellon's opinion, mentally limiting Plaintiff to simple, routing, repetitive, unskilled tasks.  Jaramillo, 576 F. App'x at 874.  The court noted that Soc. Sec. Ruling (SSR) 85-15 defines the basic mental demands of unskilled work as "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routing work setting," and recognized a limitation to unskilled work as shorthand for these particular abilities.  Id. at 875 (quoting

8

SSR 85-15, 1985 WL 56857, at *4 (1985)).  The court acknowledged that a mild limitation in the ability to concentrate and persist at simple tasks and the ability to concentrate for two-hour periods fits within the basic mental demands of unskilled work, and found no error in the ALJ's evaluation of the medical opinions of two sources.  Id., at 875-76.  However, because the ALJ accorded great weight to Dr. Mellon's opinion, and because the basic mental demands of unskilled work do not encompass the moderate limitations opined by Dr. Mellon, the court found remand was necessary because the hypothetical in that case did not include those limitations.  Id. at 876-77.  Here, the ALJ's explanation places Plaintiff's mild mental functional limitations squarely within the basic mental demands of unskilled work.  Similarly to Chapo and Jaramillo, in Wiederholt, the limitation to simple unskilled work did not adequately account for moderate mental limitations.  121 F. App'x at 839.  Keel is to the same effect.  2015 WL 1034419, at *4.

Plaintiff has shown no error here where the ALJ found only mild cognitive functional limitations and explained his bases for doing so.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 4th day of January 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**